

**SIGNED this 22nd day of September, 2007.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| JEANNA BADING | 06-52750-C |
| *DEBTOR* | CHAPTER 13 |

### DECISION ON MOTION TO TOLL EXEMPTION PERIOD

This decision involves a debtor's homestead exemption in the proceeds from the sale of one of two tracts of land, both of which singly constituted the debtor's homestead. Proceeds from the sale of a homestead normally retain their homestead exemption for six months, within which time they must be re-invested in the acquisition of a new homestead. Chapter 13 debtor Jeanna Bading (the "Debtor") seeks to toll this six month period, because a creditor abstracted a judgment as to the Debtor's homestead and refused to release the lien on one of the two contiguous tracts. The Debtor was thus effectively precluded from making a complete disposition of her homestead. Without a complete sale, the Debtor claims she did not have an opportunity to reinvest the entire proceeds from the sale during the six month exemption period allowed by Texas law. Because the Texas homestead exemption is construed favorably for debtors to provide just such an opportunity, and

because the judgment creditor's actions effectively deprived the Debtor of this opportunity, the court grants the Debtor's motion to toll the exemption period, relying on Texas authority for such a tolling.

## BACKGROUND

The Debtor owned two contiguous tracts of land, which she purchased within a few months of each other. She later built a house, which happened to be entirely located on one of the two tracts. Later, she was sued by a creditor, Gulfside Supply, Inc. d/b/a Gulfeagle Supply ("Gulfside"). Gulfside eventually obtained a judgment, which it abstracted in the deed records, and commenced collection activity, including litigation in an attempt to enforce the abstract of judgment against the real property where she lived. Meanwhile, the Debtor found a willing buyer to purchase the property, but Gulfside's abstract of judgment prevented her from consummating the sale.[1]

Gulfside eventually consented to voluntarily release its lien as to one of the two tracts (the one on which the house was built), but refused to release its lien on the other tract. The buyer agreed to proceed with the purchase in two stages, closing on the one tract, and holding off closing on the other until the Debtor could resolve the abstract of judgment lien question on the second tract. On December 4, 2006, the Debtor closed the sale as to the first tract and received $142,761.29 as proceeds from this first stage sale. The buyer of the property agreed to lease back the house to the Debtor while she attempted to resolve the dispute over the second tract.

---

[1] Even though the property was homestead under Texas law, such that the abstract of judgment is unenforceable as a matter of law, title companies are notorious cowards. Thus, a judgment creditor who otherwise might have no legitimate right to assert a lien on a judgment debtor's homestead can nonetheless tie up the property because the title company will refuse to issue clear title unless the abstract of judgment is cleared. That puts the debtor to the Hobson's choice of either paying off the judgment to free up her homestead, or initiating litigation, at great expense and time, to clear the judgment–in the meantime likely losing the sale because the buyer is unwilling to wait. Thus, an otherwise entirely invalid judgment lien can nonetheless significantly impair a debtor's homestead rights, a fact of life recognized by the Fifth Circuit in justifying the use of section 522(f)(1) to avoid such liens on property exempt from such liens under the Texas Constitution–even though Texas law purports to state that such judgment liens can never attach to homestead as a matter of law. *See Henderson v. Belknap (In re Henderson)*, 18 F.3d 1305, 1309-11 (5th Cir. 1994), *cert. den.*, 130 L.Ed.2d 490, 115 S.Ct. 573 (1994).

On December 29, 2006, the Debtor filed this Chapter 13 bankruptcy case. She claimed the state exemptions under section 522(b)(3). Texas law gives its citizens a homestead exemption in up to 10 acres of real property in an urban area, in one or more contiguous tracts, and any improvements thereon, without dollar limitation. *See* TEX. PROP. CODE, §§ 41.001(a), 41.002(a) (Vernon 2000). In addition, Texas law gives its citizens a continuing exemption in the proceeds from the sale of a homestead for six months after the date of the sale. *See id.* § 41.001(c). The Debtor here claimed the remaining unsold lot as exempt homestead, as well as the proceeds from the sale of the other lot. The exemptions were not challenged by either the trustee or any creditor, and so were allowed by operation of law. *See* 11 U.S.C. § 522(*l*); *see also Taylor v. Freeland & - Kronz*, 503 U.S. 638, 642-43, 118 L.Ed.2d 280, 112 S.Ct. 1644, 1647-48 (1992) (holding that a failure to object to exemption claims within the time provided under Bankruptcy Rule 4003(b) acts as a bar to later objections).

The Debtor also filed a Motion to Avoid Lien (Docket No. 20), pursuant to section 522(f)(1), with respect to the remaining unsold tract in order to clear Gulfside's judgment lien from that property. That motion was granted,[2] but it was also at that point in time that the Debtor realized the legal position that Gulfside intended to take as to the proceeds from the sale of the first tract. Gulfside, relying on *Zibman v. Tow (In re Zibman),* 268 F.3d 298, 304-05 (5th Cir. 2001), took the position that, when six months elapsed from the date of the closing on the first tract, the Debtor's homestead exemption in those proceeds would evaporate by operation of law unless the Debtor had

---

[2] The order granting the lien avoidance was entered on May 1, 2007 (Docket No. 21). On July 10, 2007, the Debtor filed a motion to sell the remaining tract to the same purchaser as had originally intended to buy both tracts together (Docket No. 30). The sale motion was granted on July 26, 2007 (Docket No. 32), and the Debtor closed on that sale the same day, receiving an additional $67,089.27 in proceeds from the second sale.

3

reinvested those proceeds in another homestead.[3] The Debtor, realizing that Gulfside intended to lay claim to those proceeds by enforcing its abstract of judgment against them, filed this motion (the "Motion") on June 4, 2007, seeking to toll the running of the six month period for reinvesting homestead proceeds from the first stage sale (Docket No. 26). The Debtor relied on *dicta* from *Zibman*, which questioned why no party in that case had not asked for such an extension and suggested that if the debtors in *Zibman* had so requested such an extension, the result might have been different. *See id.* at 305 n.30 (citing *Jones v. Maroney*, 619 S.W.2d 296 (Tex.Civ.App. – Houston [1st Dist.] 1981, no writ)). The Motion to toll drew an objection from the creditor, and was set for hearing.

At the hearing, the evidence consisted of a set of stipulations by the parties (which this court on the record accepted), exhibits attached to those stipulations (which this court agreed could be used as evidence without resubmission as separate exhibits), and testimony from the Debtor. The Debtor testified that, at all relevant times, both tracts of property were used and intended to be used by the Debtor as her homestead for her and her family. She added that there was a single fence around both tracts, and no fencing to demarcate the two tracts. No competent evidence was presented to suggest any serious doubt about the homestead nature of both tracts.[4] The docket also reflects that the creditor did not challenge the Debtor's claim of exemption in either the proceeds from the sale of the first tract, or her claim of exemption on the remaining unsold tract.

---

[3] In *Zibman*, the court of appeals for the Fifth Circuit held that an intervening filing of a bankruptcy petition during the six month period during which proceeds from the sale of a homestead were exempt did not freeze the exemption period. *Id.* at 305.

[4] Counsel for Gulfside attempted to introduce some question on this point through his cross-examination of the Debtor, but elicited no testimony to bolster the questions he attempted to raise through his cross-examination. Counsel also failed to submit any exhibits to support the contentions raised in his questioning. For reasons stated later in this decision, the question whether Gulfside's objection to the debtor's exemption claim was in good faith is largely irrelevant anyway.

The Debtor testified that she had not reinvested the proceeds from the sale of the first tract for a couple of reasons. The first reason was a practical one—the Debtor claims that she was unable to find a suitable new home using the proceeds from the sale of just one of the two tracts. The Debtor stated that she wanted to continue to live in the Bulverde area, as her child attended a Christian school there and she did not want to have to stop sending her there. She also testified that obtaining new financing was difficult. The second reason was also practical, but in a legal sense. The Debtor testified that she was concerned that if she did find another home and reinvest the proceeds from the sale of the first tract, she would find herself with two homesteads—the remaining unsold tract and the newly purchased home. She knew that one cannot own two homesteads in Texas, and feared that in buying a new one she would lose her homestead rights in the second of the two lots that had constituted her previous homestead. If the homestead protection was lost on that second lot, she feared that Gulfside would then promptly snatch it up. That legal problem was solved, but not until May 1, 2007 when the court entered an order avoiding Gulfside's judicial lien as to the unsold tract.

To date, the Debtor has not reinvested the proceeds from either tract, in part because of the pendency of this dispute.

## ANALYSIS

Gulfside maintains that, under *Zibman*, the proceeds from the sale of the first tract of property are no longer exempt, because the six month period for reinvestment lapsed on or about June 4, 2007. Gulfside has not argued, but seems to suggest, that the proceeds from the sale of the second lot are similarly vulnerable if they are not reinvested within six months after their receipt (which was July 26, 2007).

The Debtor has two arguments which need to be addressed here. First, the Debtor argues that Texas law permits a court, in equity, to toll the six month period provided in the statute, under situations such as are presented here. Second, the Debtor contends that the six month period has not even commenced to run until July 26, 2007, because the sale of the homestead was not fully completed until the second tract was released from dispute by this court's May 1, 2007 order voiding Gulfside's lien, and finally sold. Thus, the Debtor contends, she should have until six months after July 26, 2007 to reinvest the proceeds, as a matter of state law.[5]

The court agrees with the Debtor on both of these grounds, though the stronger ground is the second. The protection given in section 41.001(c) of the Texas Property Code extends to proceeds from the sale of a *homestead*, not to sales of parcels of property that might make up a homestead. TEX. PROP. CODE § 41.001(c) (Vernon 2000). The homestead itself is defined in the Property Code: "If used for the purpose of an urban home . . . the homestead of a family . . . shall *consist of* not more than 10 acres of land which *may be in one or more contiguous lots*, together with any improvements thereon." *Id.* § 41.002(a) (emphasis added). Thus, the homestead may *consist* of more than one lot, but all of the lots taken together *constitute* the homestead.

The Debtor in this case found a buyer for her entire homestead, who was ready, willing, and able to close on the purchase of *both* tracts in December 2006. The barrier that prevented the entire sale from being consummated at that time was Gulfside's refusal to release its abstract of judgment

---

[5] The Debtor also argued that Gulfside should have no sustainable basis for claiming that any of the monies in question might cease to be exempt, because Gulfside failed to object to the debtor's claim of exemptions within the time allowed under Rule 4003(b). *See* FED.R.BANKR.P. 4003(b). Gulfside responds that a creditor should not be required to file a "conditional objection" based on what *might* happen after the close of the time allowed for objection to exemptions, on pain of those exemptions being allowed as a matter of law under section 522(*l*). The court agrees with Gulfside on this issue. Were the rule otherwise, then trustees and creditors alike would have a duty to object in every proceeds case, just to make sure they preserved their rights. That strikes the court as an unnecessary formality, and one that is difficult to square with the rationale employed by the Fifth Circuit in *Zibman* to reach its result.

lien against one of the two tracts. As it was, the Debtor chose to sell *part* of her homestead at that time, with the rest to be sold as soon as she could figure out a way to get rid of the cloud on title that Gulfside created.[6] But for Gulfside's insistence that it not release that abstract of judgment lien on the second tract, the Debtor would have been able to sell the entire homestead in a single transaction. The Debtor could then have proceeded to seek to reinvest those proceeds, and would have had until June 4, 2007 to do so. Had she not done so, then *Zibman* would have applied and she would have lost her homestead protection on the proceeds.

That, however, is not what happened here. Gulfside's actions forced the Debtor into a difficult catch. On the one hand, she could have reinvested the proceeds from the partial sale of only the first tract of land in a new homestead, but risk promptly losing her homestead claim to the second tract under Texas' rules relating to abandonment. *See England v. FDIC (In re England)*, 975 F.2d 1168, 1175 (5th Cir. 1992) ("[A]bandonment by the acquisition of another homestead is one way a claimant forfeits his or her rights to exempt sale proceeds of the former homestead."); *In re Evans*, 135 B.R. 261, 264 (Bankr. S.D.Tex. 1991) ("Due to the abandonment of his previous homestead and his claim of exemption for his current homestead, the debtor may not impress upon the remaining proceeds from the sale of his previous homestead any type of homestead character."). Alternatively, the Debtor could have waited for the cloud on the title on her unsold tract to be cleared so that the balance of her homestead could be sold, but then risk losing the exemption on the first tranche of proceeds if that process (and the sale and reinvestment process) took longer than six months from December 4, 2006 (the first stage sale), assuming Gulfside took the position that those

---

[6] Lest she lose the selling opportunity entirely. The sale of the first tract yielded gross proceeds of $620,000, but a net of just $142,761.29. That in turn suggests a pre-existing lien against the property likely in excess of $400,000. *See* Debtor's Statement of Financial Affairs, Question 10 (Other Transfers), Docket No. 1. Thus the sale might have been motivated in part by the debtor's inability to continue servicing the debt. The record is unclear on this point, however.

proceeds had to be re-invested or lose their homestead protection. Gulfside, of course, took precisely that position. Gulfside argues, it would seem, that the Debtor should lose either way. By this argument, Gulfside stands to gain a significant tactical advantage by the simple *fiat* of having refused to release a lien it was never entitled to assert against this property in the first place.[7]

The odd and inequitable result Gulfside seeks to achieve – destroying the debtor's homestead rights by simply being obstructionist – is wholly at odds with the salutary purpose of the homestead exemption. The construction offered up by Gulfside all but invites other creditors to intentionally engage in this sort of "partial release" tactic with the hope of backing debtors into this sort of corner.[8] The construction also fights with the time-honored principle in Texas that its homestead laws are to be construed liberally, so as to further the intent expressed in the Texas Constitution that the homestead be protected and the debtor not be left without a home. *See Whiteman v. Burkey*, 282 S.W. 788, 789 (Tex. 1926); *Woods v. Alvarado State Bank,* 19 S.W.2d 35, 35-36 (Tex. 1931); *Wallace v. First Nat. Bank,* 35 S.W.2d 1036, 1040 (Tex. 1931) ("The courts of this state have held, and it is now undoubtedly the settled rule, that the homestead laws are to be liberally construed to effectuate their beneficient purposes"); *see also Bradley v. Pac. S.W. Bank (In re Bradley),* 960 F.2d 502, 507 (5th Cir. 1992), *cert. den.*, 507 U.S. 971, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1992) ("Because homesteads are favorites of the law, we must give a liberal construction to the

---

[7] Gulfside asserts that its refusal to release the lien as to the second tract of land was a good faith challenge to the Debtor's claim that the tract was part of her homestead and, thus, exempt. As will be discussed *infra*, for the purposes of tolling section 41.001(c) of the Texas Property Code, good faith is irrelevant. If a creditor wishes to challenge the homestead status of a debtor's property, the creditor must pay the price of such a challenge—that is, it must wait even longer to reach the proceeds from the sale of a debtor's homestead.

[8] The facts of this case are far from out of the ordinary. There are many subdivisions in the San Antonio area alone where the homeowner may be likely to own two to ten acres of property, consisting of contiguous lots (not all of which may have been acquired in a single transaction) and which are used as homestead. Hill Country Village, Fair Oaks Ranch, Anaqua Ranch, Cross Creek Ranch, Timberwood Park, Cordillera Ranch, and many others come to mind.

constitutional and statutory provisions that protect homestead exemptions."); *In re England*, 975 F.2d at 1174. A construction which effectively eviscerates these protections is one that ought to be eschewed if there is another plausible construction that would comport with protecting the homestead.

Indeed, when Texas courts *have* been confronted with similar facts, those courts have set out equitable principles and rules of construction that advance just that purpose. In *Jones v. Maroney*, a Texas court of appeals ruled that, due to a creditor's abstract of judgment lien asserted against the homestead of the judgment debtors, the judgment debtors had no practical opportunity to invest the proceeds from the voluntary sale of their homestead within the six month period afforded by the statute, and that, as such, the six month period ought to be "tolled." *Jones v. Maroney*, 619 S.W.2d 296 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *see also In re Zibman*, 268 F.3d 298, 305 n. 30 (5th Cir. 2001) (citing *Maroney* in a footnote for the proposition that the court might justifiably have tolled the exemption period had the debtors requested such a tolling during the exemption period). Gulfside argues that *Maroney* case is factually distinguishable from this case, but this court does not believe that it is distinguishable in any way that is significant to the outcome of this case.

In *Maroney*, the judgment debtors voluntarily sold their homestead with a title company handling the closing. *Maroney*, 619 S.W.2d at 297. Because the judgment creditor asserted an abstract of judgment lien against the debtors' homestead, the title company withheld the proceeds of the sale that was otherwise due to the debtors. *Id.* Three weeks later, the debtors filed an action seeking a declaration that the proceeds from the sale were exempt from garnishment. *Id.* A few days shy of six months after the initial sale of the debtors' homestead, a district court in Harris County held that the proceeds were exempt under the applicable homestead statute and extended the

period during which the cash proceeds would remain exempt. *Id.* On appeal, the creditor asserted that such an extension could only be made by the legislature. *Id.* However, in affirming the lower court, the court in *Maroney* noted that the debtors were denied an "opportunity to exchange or invest proceeds from the voluntary sale of their homestead within the 6 [sic] month period after such sale since the proceeds were withheld from them by virtue of an abstract judgment lien asserted against their homestead." *Id.* As a result, the court refused to allow the creditor to gain a tactical advantage over the debtors by tying up the proceeds from the sale of their homestead. *See id.* at 297-98 ("Thus, it becomes apparent that the purpose for which the [homestead] statute was enacted would be destroyed if the court would not toll the statute during the period of time the proceeds were involved in court litigation.")

While Gulfside says that *Maroney* is distinguishable on its facts, in truth, this court could not conceive of a case more on point.[9] Gulfside, in granting a release of its judgment lien as to the first tract of land but not as to the second tract of land comprising the Debtor's homestead, gained the same kind of tactical advantage over this Debtor, effectively depriving her of the ability to re-invest the proceeds from the sale of her homestead.[10] Like the debtors in *Maroney*, the Debtor sought to

---

[9] *All* cases are factually distinguishable at some level. Lawyers learned in law school that the true "white horse" case that is "on all fours" with the facts of a given live dispute rarely, if ever, exists. Were the test of applicability of a given precedent that it must meet the "white horse/on all fours" standard, every new case would have to be decided without the benefit of any precedent. That kind of *ad hoc* anarchy is not, one would hope, the current state of how law is done.

[10] Gulfside takes the position that the Debtor has six months from the sale of the first tract of land to reinvest the proceeds from that sale before the proceeds lose their exempt status under section 41.001(c) of the Texas Property Code. Should the Debtor reinvest those proceeds in a new homestead before selling the second tract of land, Gulfside argues that the second tract will lose its exempt status (as one cannot have two homesteads). Thus, the effect of Gulfside's insistence on not releasing its lien on one of the two tracts was to force the debtor to sacrifice part of her homestead (the second tract) in order to preserve her homestead interest in the proceeds of the first tract. *See In re Evans*, 135 B.R. 261, 264 (Bankr. S.D.Tex. 1991). Only if the debtor were willing to sacrifice part of her homestead could she preserve the rest, because of Gulfside's abstract of judgment. Alternatively, the debtor could choose to wait until the second tract could finally be sold – but would in the process risk the possibility that a court might determine that she thereby lost her homestead interest in the proceeds of the first tract. The debtor is justifiably entitled to a resolution of these legal questions before re-investing proceeds, because otherwise the debtor risks losing part of her homestead to which she is otherwise entitled as a matter of law. *See* TEX.PROP.CODE, § 41.002(a) (defining "the homestead" as "one or *more* contiguous tracts").

sell her homestead voluntarily. And, like the debtors in *Maroney*, the Debtor here was unable to reinvest the proceeds from the sale of her homestead due to a lien asserted by Gulfside against the Debtor's property.

The only factual distinction in *Maroney* is that the debtors in *Maroney* owned a homestead consisting of only *one* tract of land. However, section 41.002(a) of the Texas Property Code makes clear that the number of contiguous tracts comprising one's homestead is completely irrelevant to whether all the tracts, taken together, constitute a single homestead. Whether a debtor's homestead consists of a single tract of land or 100 tracts of land, a homestead is still a homestead. In this case, the Debtor's homestead consisted of *two* contiguous tracts, not one, as in *Maroney*. *See* TEX. PROP. CODE § 41.002(a). But nothing in *Maroney* remotely suggested that the court's reasoning was limited to the single-tract homestead. If anything, the rationale employed by the *Maroney* court has even greater force in the two-tract case, precisely because of the opportunities that two tracts present for strategic behavior that might jeopardize a debtor's homestead claim.

But for Gulfside's refusal to release its lien on the second tract the Debtor's homestead, the Debtor in this case would have sold her homestead in its entirety in a single transaction. The evidence is uncontroverted on this point. The Debtor's inability to sell her homestead in its entirety put her to the Hobson's choice of either going through with only a partial sale of her homestead (and risking the possibility that a court might hold that the six month period started running from receipt of those proceeds), or holding off on the sale entirely while filing an action to avoid Gulfside's lien as to the second tract (but risk losing the buyer all together).[11] The Debtor in this case chose the first

---

[11] Buyers are not fungible. The evidence established that the Debtor found a ready, willing, and able buyer to purchase her homestead in its entirety. Had the Debtor decided to hold off the sale in favor of selling both tracts together, it is entirely plausible that the buyer could have walked away from the sale, leaving the Debtor with no proceeds to reinvest at all. That, in effect, would allow a creditor with an otherwise invalid abstract judgment lien to restrict the debtor's free alienation of her homestead, effectively compromising one of the valuable incidents of homestead ownership: the right to sell.

11

option—to sell her homestead in two steps. The thrust of Gulfside's argument is that, in so doing, the Debtor has effectively surrendered part of her homestead – due solely as it turns out to Gulfside's own conduct in refusing to release its lien on the second tract. Gulfside's action effectively threatened to deprive the Debtor of a portion of her homestead – either the proceeds from the first tract, or the remaining unsold second tract. That action, in this court's view, has no meaningful distinction from the situation in which the action of a creditor operates to withhold *all* of the proceeds from the sale of a homestead (as the court in the *Maroney* case held).

As in *Maroney*, it is the refusal of the creditor here to release its abstract of judgment lien that places at least part of the Debtor's homestead in jeopardy. The lien prevented the sale of the entire homestead as a unit. She sold one of the two tracts in order to avoid losing her buyer.[12] If she reinvested the proceeds from the first tract into a new home, she likely would have lost her homestead claim in the *second* tract, exposing it to creditor claims.[13] If she didn't reinvest the proceeds from the first tract, she risked losing her exemption in the proceeds from the *first* tract. Nothing in *Maroney* even remotely says that a creditor's refusal to release a lien is permissible so long as it only requires a debtor to lose only *part* of her homestead. Nor has the court found any Texas case that supports such a notion. As a direct result of Gulfside's actions, the Debtor has been

---

[12] As it turns out, the Debtor's decision to move forward with the sale was prescient. By March 2007, the collapse of the "housing bubble" was already the topic of national discussion. *See* Paul Krugman, "The Big Meltdown," *New York Times* ( Op-Ed, March 2, 2007). By July 2007, that collapse had led to the bankruptcies of a number of mortgage companies. *See* "American Home Mortgage Seeks Chapter 11 Bankruptcy Protection" *New York Times* (Business, August 7, 2007) (discussing filings by New Century Financial and others as well). By August 2007, the worst credit crunch in recent memory had gripped Wall Street, threatening the demise of one of the largest home mortgage companies in the nation, and sending the stock market into a tailspin. *See* "Persistent Fears Drive Stocks Down" *New York Times* (Business, August 29, 2007). The resulting credit contraction dried up mortgage lending for many sectors, drove up foreclosure rates, and drove down the value of homes in many parts of the country.

[13] She would not lose her exemption in the remaining tract because the re-investment would count as disposition of her homestead under section 41.001(c) of the Texas Property Code, however. *See* discussion *infra*. Rather, she would lose the exemption in the second tract because her homestead interest in that tract would be deemed to have been *abandoned* when she acquired a new homestead. *See In re Evans*, 135 B.R. 261, 264 (Bankr. S.D.Tex. 1991).

deprived of her opportunity to enjoy the full benefits of the homestead guaranteed to her under the Texas Constitution. The court has no doubt concluding that the same court that issued the *Maroney* decision would similarly conclude that, at the very least, a tolling is appropriate in the two-tract context presented by the facts of this case.

But tolling may not even be necessary, because the Texas Property Code applies the six month re-investment period to the date of receipt of the proceeds from the disposition of the *homestead*, not to the disposition of some *portion* of the homestead. The Debtor is entitled to re-invest the proceeds of her entire *homestead*, which consisted of *both* tracts—not just one. Until the Debtor received the proceeds from the sale of *both* tracts of land comprising her homestead, her opportunity to re-invest the proceeds does not even begin. In other words, the six month period does not even begin to run until the debtor is finally able to complete the sale of the homestead – both tracts. That did not occur in this case until July 26, 2007.

The court finds as a matter of law that this latter ground is the better read of the homestead exemption in Texas, at least on the facts of this case, as it gives effect to the plain meaning of both the definition of a homestead as found in section 41.002(a) and the precise language relating to the disposition of proceeds from the sale of a "homestead" in section 41.001(c). *See* TEX. PROP. CODE, §§ 41.002(a), 41.001(c) (Vernon 2000).[14]

---

[14] Importantly for this case, it is uncontroverted that the debtor had a buyer ready, willing and able to purchase the *entire* homestead as a single unit, and only the creditor's decision not to fully release its judgment lien prevented that sale from being consummated. A different case might be presented were a debtor who owns two tracts comprising a homestead to sell only one of those two tracts to a buyer with no intention to sell the second tract in the same transaction. Basic principles of abandonment of a homestead interest would probably come into play on those facts, causing the debtor to lose her homestead claim either to the proceeds (if not re-invested) or the remaining tract (if not further occupied as a homestead). *See, e.g., Morris v. Porter*, 393 S.W.2d 385, 388 (Tex.Civ.App. – Houston 1965, writ ref'd n.r.e.) (discussing abandonment principles and citing cases). While the court has expressed concern in this decision about creditors taking tactical advantage of the two-tract homestead situation, the court cautions here that debtors too may not take tactical advantage of the narrow rule espoused in this decision. The facts of this case established beyond serious doubt that the debtor had in fact tried to sell her *entire* homestead in a single transaction, but was prevented by the creditor's judgment lien from doing so. When a debtor cannot establish that base fact, the rule of law set out in this decision should not apply.

Nonetheless, and in an abundance of caution, the court also concludes prophylactically that the six-month period specified in section 41.001(c) should be tolled (following *Maroney*) to assure that the Debtor has the opportunity to re-invest the proceeds from the sale of *both* tracts comprising her homestead to a date six months following the receipt of the proceeds from the second of the two homestead tracts, without fear whether the six month period under section 41.001(c) has run with regard to proceeds from the sale of the first tract. *See Maroney*, 619 S.W.2d, at 298. The sale of the second tract could not close until the court issued orders (1) deeming Gulfside's lien to be void; and (2) approving the sale of the second tract. The latter did not occur until July 26, 2007. Thus, to provide the Debtor with such an opportunity, the exemption period for the proceeds from the sale of the first tract is deemed tolled, effective the date of the filing of the Debtor's motion[15] until a date six months following the debtor's receipt of the proceeds from the sale of the second tract. That date is January 26, 2008. *See In re Malone*, 201 B.R. 175, 176 (Bankr. W.D.Tex. 1996) (explaining how the "six months" specified in section 41.001(c) is to be calculated).[16]

As a final note, Gulfside contends that its refusal to release the lien as to the second tract of land was made in good faith. That may be the case, but it matters little for our purposes here. The creditor's good faith belief that the debtor's homestead claim on the second tract might not be valid is irrelevant to the question whether the six month period in section section 41.001(c) should be

---

[15] The debtor who files the motion has only limited control over when such a motion might be heard – especially when the motion is opposed by the very party seeking to take advantage of the continued passage of time. The appropriate means for assuring the debtor is not punished either by the court's own docketing needs or the delay occasioned by the creditor's opposition is to assure that the tolling order be effective as of the date of the filing of the motion.

[16] While the Fifth Circuit held in *Zibman* that an intervening bankruptcy petition does not freeze the six month exemption period for proceeds from the sale of a homestead, the court in *Zibman* at least acknowledged that tolling of the exemption period is distinguishable from the freeze that was requested by the debtors in that case. *See Zibman v. Tow (In re Zibman),* 268 F.3d 298, 304-05 n.30 (5th Cir. 2001). In this case, the Debtor claims that the exemption period should be tolled due to the inequitable conduct of Gulfside. In *Zibman*, the debtors claimed that the exemption was frozen in time as a result of the mere filing of their bankruptcy petition.

tolled. As the court in *Maroney* held, a court should toll the exemption period of section 41.001(c) where a debtor has been deprived of her opportunity to reinvest the proceeds from the sale of her homestead by virtue of the *fact* of the creditor's assertion of its lien and the *fact* that that assertion could only be resolved by the intervention of a court. *See Maroney*, 619 S.W.2d at 297-98. The court in *Maroney* had no particular occasion to challenge the *bona fides* of the creditor's claim in that case, and the court has no particular reason to challenge the *bona fides* of the creditor's claim in this case either. However, for so long as the proceeds from the sale of a homestead are tied up—whether by a title company or by a Hobson's choice created by the creditor—in such a way that only judicial intervention can resolve the problem, then the creditor should not, in equity, be able to reap an unwarranted benefit from its own position (regardless the *bona fides* of that position), to wit, depriving the debtor of all or any part of her homestead interest by the *fiat* of the passage of time needed to resolve the dispute put into play by the creditor's own legal position. For so long as the dispute remains unresolved, the debtor could not be expected to re-invest proceeds – especially when doing so would all but have required her to give up part of her homestead just to make sure she acted within six months. The creditor's legal position, regardless its motivation, should not result in a windfall to the creditor, especially when that windfall is the destruction of a Texas debtor's homestead rights. *See generally Gillis v. Gillis*, 435 S.W.2d 171, 174 (Tex.Civ.App. – Ft. Worth 1968, writ dism'd) (equity does not allow the imposition of a statute or legal rule to be used as an instrument to accomplish injustice); *Barr v. Thompson*, 350 S.W.2d 36, 42 (Tex.Civ.App. – Dallas, 1961) ("Equity looks to the substance and not the shadow, to the spirit and not the letter. It seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling. Equity abhors technical rules and restrictions. A court of equity will depart from rigid

15

rules of law whenever it is necessary to accomplish the ends of justice."); *Jones v. Jimmerson*, 302 S.W.2d 161, 168 (Tex.Civ.App. – Texarkana, 1957, writ ref'd n.r.e.) (a right cannot arise to anyone out of his own wrong); *see also Swoboda v. Wilshire Credit Corp.*, 975 S.W.2d 770, 779 (Tex.App. – Corpus Christi, 1998) (in context of running of statute of limitations, well-established rule in Texas is that, when a person is prevented from exercising a legal remedy by the pendency of a legal proceeding, the time during which he is so prevented should not be counted against him). It does not matter *why* the debtor was denied the opportunity to reinvest without penalty (at least in terms of motive of the creditor). It only matters *that* the debtor was denied the opportunity to reinvest without penalty by the pendency of the creditor's abstract of judgment.

Thus, a creditor is certainly free to challenge a debtor's homestead claim. However, the creditor is *not* free, by the fact of that challenge alone, to obtain a windfall in the form of a debtor's losing all or part of her homestead by the passage of time occasioned by the creditor's challenge – redounding to the benefit of the creditor asserting the very judgment lien that prevented timely disposition of the proceeds of sale. If a creditor wishes to mount such a challenge, well and good. But when the resolution of that challenge takes longer than the six months provided in to the debtor in section 41.001(c), the creditor should not be permitted to obtain a *de facto* "win" on its challenge solely due to how long it takes to resolve the challenge. That is what Gulfside effectively demands in this case, and neither the *Maroney* court nor this court permit such an inequitable outcome. The challenge may be made in good faith – but the demand that the clock still run on the debtor while the challenge awaits resolution is most certainly *not* in good faith. Equity must intervene to maintain the status quo until the challenge can be resolved, just as equity intervened in *Maroney*.

## CONCLUSION

While the Debtor received proceeds from a partial sale of her homestead prior to filing her Chapter 13 petition, Gulfside's refusal to release the lien clouding the title of a portion of the Debtor's homestead prevented her from selling her entire homestead, pushing her to sell her homestead in two partial sales—the second sale closing more than six months after the date of first partial sale. The court finds that, as a matter of law, the debtor did not complete the sale of her homestead until July 26, 2007, when she was finally able to consummate the sale of the second tract to her original buyer, consistent with the original intent of both she as seller and her buyer. Thus, as a matter of law, the six month period provided under section 41.001(c) did not commence to run until July 26, 2007, and ends January 26, 2008.

Alternatively, and in aid of the foregoing finding and conclusion, the court further finds and concludes that the delay caused by Gulfside's refusal to grant a full release of its lien on the Debtor's homestead deprived the Debtor of her opportunity to reinvest the proceeds from the voluntary sale of her homestead (consisting of both tracts) during the six month exemption period provided by the Texas homestead statute. Because of this deprivation, it would be inequitable for Gulfside to enjoy a windfall from conduct that effectively prevented the debtor from reinvesting all of those proceeds. Thus, the six month exemption period provided by section 41.001(c) of the Texas Property Code is tolled until January 26, 2008, effective *nunc pro tunc* as of June 4, 2007.

An order consistent with this opinion will be separately entered.

# # #