**SO ORDERED.**

**SIGNED this 22nd day of January, 2008.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| JEANNA M. BADING | 06-52750-LMC |
| *DEBTOR* | CHAPTER 13 |

### ORDER DENYING MOTION FOR STAY PENDING APPEAL

On September 24, 2007, this court entered a decision and order holding that the debtor's six month exemption period for reinvesting the proceeds from the sale of her homestead under section 41.001(c) of the Texas Property Code did not commence to run until July 26, 2007 and so would end on January 26, 2008 (the "Tolling Order"). *See generally In re Bading,* 376 B.R. 143 (Bankr. W.D. Tex. 2007). Gulfside Supply, Inc. d/b/a Gulfeagle Supply ("Gulfside" or "movant") timely filed a notice of appeal (Doc. #42). On October 26, 2007, Gulfside filed what it styled an "Emergency Motion for Stay Pending Appeal" ("Motion for Stay") (Doc. #50). That motion asked the court to grant a stay of the enforcement of the order (which gave the debtor six months within which to re-invest the proceeds of the sale), and further asked the court to direct the debtor to refrain from

dissipating, transferring, conveying, assigning or reinvesting the Tract I sale proceeds in a new homestead or other exempt property, pending appellate review.

The court set this motion for hearing on November 5, 2007. At the conclusion of the arguments of the parties, the court stated on the record its view that Gulfside had not established the probability of success on the merits. However, the court also noted that a ruling on the Motion for Stay was premature at that time, because at that point in time, there was nothing in the court's view to stay because the debtor had not yet located a new residence into which to invest the proceeds. The court did not want Gulfside's appeal to be rendered moot, however, and so took the Motion under submission until it became necessary to rule on whether a stay should be granted.

On January 14, 2008, the debtor filed a Motion to Incur Debt, seeking authority to purchase a new homestead and to enter into a mortgage for that purpose (Doc. #66). The court heard that motion on January 22, 2008. At that hearing, the court also indicated that it was now time, in its view, to rule on the motion for stay pending appeal, because now the debtor was seeking to reinvest the proceeds.

**Standard for Granting Motion to Stay Pending Appeal**

The court of appeals for the Fifth Circuit has set out a general four part test for whether a stay pending appeal should issue with respect to an order or judgment entered by a federal court. *See In re First South Sav. Ass'n,* 820 F.2d 700, 704 (5th Cir. 1987) (citing *Ruiz v. Estelle,* 666 F.2d 854, 856 (5th Cir. 1982)); *see also McNiel v. Dresser Indus. (In re Fed.-Mogul Global, Inc.),* 37 Fed. Appx. 88 (5th Cir. Apr. 29, 2002) (per curiam) (citing *Arnold v. Garlock, Inc.,* 278 F.3d 426 (5th Cir.2001), *reh'g denied,* 288 F.3d 234 (5th Cir.2002)). The test has been adopted for use in bankruptcy proceedings as well. *See First South Savings*, 820 F.2d at 704.

The four-part test is as follows:

(1) whether the movant has made a showing of likelihood of success on the merits;

(2) whether the movant has made a showing of irreparable injury if the stay is not granted;

(3) whether the granting of the stay would substantially harm the other parties; and

(4) whether the granting of the stay would serve the public interest.

*See id.* The movant "need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs *heavily in favor* of granting the stay." *Arnold v. Garlock, Inc.,* 278 F.3d at 439 (internal quotations omitted).

**Discussion**

The issue on appeal is whether this court erred as a matter of law in holding that, in the case of a Texas homestead consisting of two tracts, the six-month period that "shelters" the proceeds from the sale of that homestead only commences to run when both tracts are sold. *See In re Bading,* 376 B.R. 143, 148 (Bankr. W.D.Tex. 2007). In that decision, the court found that, because Gulfside's conduct forced the debtor to sell her homestead in a two-stage sale, the sale was not completed until the debtor was finally able to complete the sale of both tracts. *See* 376 B.R. at 148. Thus, ruled the court, the six month proceeds exemption period did not commence to run until the sale of the second tract closed. *Id.* Gulfside also appeals the court's alternative ruling that, in all events, the six-month period should be equitably tolled to assure that the debtor would have the full six months to reinvest *all* of the proceeds from the sale of her *entire* homestead (*i.e.,* both tracts) as allowed by Texas law. *See id.* at 155 (citing *Jones v. Maroney,* 619 S.W.2d 296, 297-98 (Tex.Civ.App.—Houston[1st Dist.] 1981, no writ)); *see also* TEX. PROP. CODE § 41.001(c) (Vernon 2007).

Gulfside, in this court's view cannot establish its likelihood of prevailing on the merits. The court recognizes that the movant is not required to retry the merits of the case it has just lost, but must at least demonstrate that it has a probability of succeeding on the merits due to some undecided question of law. The court further concedes that the issue of equitable tolling has not yet been decided by the Fifth Circuit, but only adverted to in a footnote in *In re Zibman,* 268 F.3d 298, 305 n.30 (5th Cir. 2001) (citing *Maroney* for the proposition that the court might justifiably have tolled the exemption period had the debtors requested such a tolling during the exemption period). The issue of when the sale of a homestead is completed, however, is not an undecided legal question. In reviewing the Texas homestead exemption statute and the policy of construing exemptions broadly, the court found that the sale could not have been completed until the debtor was able to sell both tracts comprising her homestead. Gulfside has not cited any case law to the contrary nor has it presented any evidence that would lead a court to find that the debtor sold her homestead at any time prior to July 26, 2007. Merely telling the court that the issues are novel does not, by itself, establish the likelihood of success on the merits. And finding no other arguments posed by Gulfside to establish the likelihood of success on the merits, this court concludes that Gulfside has not met this factor.

However, even if Gulfside were able to meet this factor, all other factors weigh *against* granting Gulfside's Emergency Motion. Gulfside cannot demonstrate any irreparable injury if this court does not grant the stay. Gulfside argues that a stay is necessary to prevent the debtor from reinvesting the proceeds into a new homestead or from otherwise spending the proceeds. The implication of this argument (one not expressly articulated either at the original hearing on the motion for stay, or at the hearing on the motion to incur indebtedness) is that creditors with

judgments have a sort of "springing interest" in the proceeds from the sale of a debtor's homestead that ought to be protected, in the event that the proceeds in question are ultimately not re-invested within the six month period allowed under the statute. Gulfside of course cites no case law for such a proposition — it did not even articulate the argument as such in its pleadings or arguments. At best, it seems to have assumed this to be the law.

What law there is on the point, however, supports a contrary view. The statute itself imposes no obligation on a debtor to segregate the proceeds from the sale of a homestead during the six month period, nor does it afford a creditor any right to place any sort of lien on those funds in the interim period. In a bankruptcy case, those funds are protected by the automatic stay in any event and so could not be attached by Gulfside. Although the statute gives the debtor six months within which to re-invest the proceeds, the statute does not *require* the debtor to re-invest those proceeds, nor does it suggest that the statute's protection are "all or nothing," as suggested by Gulfside in its argument.[1] The debtor controls the disposition of her own proceeds. *See In re Evans,* 135 B.R. 261, 264 (Bankr. S.D.Tex. 1991) (citing *In re Harlan,* 32 B.R. 91 (Bankr. W.D.Tex. 1983)). So long as the proceeds from the sale of the debtor's homestead are exempt, the debtor may do with them as she desires to the extent that she has not otherwise abandoned her claim of homestead rights in the proceeds. *See In re Evans*, 135 B.R. at 264 (citations omitted).[2]

---

[1] Again, while not clearly articulated, Gulfside's reference to statements from the merits hearing that the debtor intended at that time to re-invest *all* of the proceeds in a new homestead suggests obliquely Gulfside's apparent belief that, if a debtor should use *any* of those proceeds for any other purpose in the interim, then the balance of the proceeds lose their exemption protection. No cases are cited for this proposition.

[2] In *Evans*, the debtor *did* reinvest part of the proceeds in a new homestead. The court ruled that the debtor could not have two homesteads — one consisting of the proceeds from the old homestead and the other consisting of the newly purchased homestead. Thus, the balance of the proceeds lost their exemption protection because, as the court noted, there is no better evidence of abandonment of an old homestead than acquiring a new homestead. *See Evans*, 135 B.R. at 264. That is a correct statement of the law, in this court's view, but it is not our facts.

-5-

The debtor testified at the hearing on the motion to incur that she had expended some portion of the exempt proceeds on unforeseeable, necessary expenses. That does not count as abandonment under *Evans*. The debtor has now found a new home, and wishes to invest the balance of those proceeds in that new homestead. The Texas exemption statute gives her that right. And, it appears that she would have exercised that right long ago, but for Gulfside's continued attempts to prevent her from doing so. Gulfside, however, wishes by the *fiat* of a stay pending appeal to continue to assert rights it does not have. Finding no evidence that the debtor has, in fact, abandoned her homestead rights, the court concludes that Gulfside has no rights to assert in the proceeds and, even if it does, those rights would not be injured by allowing the debtor to purchase a new homestead.

The third factor is most telling as to why this court should deny the Motion for Stay. That factor asks the court to evaluate whether granting the stay would harm the party against whom the stay is to be entered. Here, a stay would preclude the debtor from re-investing the proceeds within six months, and so insure that the six month period would run out. Gulfside would then argue that it no longer matters whether this court was right or wrong in its decision, because the proceeds are no longer exempt, as of January 26, 2008. With a simple stay, Gulfside wins by the mere passage of time, and does not need its appeal. That is a pretty clear (and potentially irrevocable) harm to the debtor.

The debtor filed a motion to incur debt to purchase a new homestead, a motion this court has granted. With the mortgage industry being what it is today, the debtor's ability to obtain financing on a new home now is quite a fortunate event, one which, if lost, might not be found again.[3] Were

---

[3] The meltdown in the subprime mortgage market has substantially constricted the availability of new mortgage financing – certainly for presumed subprime borrowers such as a debtor in a chapter 13 bankruptcy proceeding. Finding financing over the last six months has not been easy. *See* Kimberly Blanton, *Subprime Woes Hit Buyers: Those with Limited Resources Finding it Harder to Get Loans,* BOSTON GLOBE, May 10, 2007, at Business Section ("Due to a rash of defaults

this court to grant Gulfside a stay pending appeal, the debtor would almost certainly miss out on her opportunity to obtain financing, and the clock is running on her obligation to re-invest the proceeds.[4] The injury to the debtor in the current market would be irreparable. Thus, the third factor weighs *heavily* against granting the Motion for Stay.

The fourth factor also weighs against granting the Motion for Stay. The interests of the public would not be served by halting the debtor's ability to obtain a new homestead. The Texas homestead exemption statute is to be construed broadly to preserve the value of the exemption against the claims of creditors. That is the whole point of exemptions, after all. *See In re Leva*, 96 B.R. 723, 727 (Bankr. W.D. Tex. 1989). The debtor here seeks to do just that. Granting Gulfside's Motion for Stay would only have served either to prolong or entirely prevent the debtor from preserving the value of her homestead from the claims of this creditor. That is not consistent with the public policy of this state regarding exemptions.

**Conclusion**

Gulfside failed to demonstrate the requisite criteria for granting a stay pending appeal. It cannot establish that success on the merits is likely or even probable, it cannot demonstrate irreparable injury in the absence of a stay. To the contrary, the irreparable harm likely to occur would be that visited on the debtor were a stay granted. The Emergency Motion for Stay Pending Appeal is therefor DENIED.

# # #

---

by subprime borrowers, mortgage companies have tightened lending to clients with good credit as well. These are typically buyers who once easily got 90 to 100 percent financing for a home, but now either have trouble getting loans or are paying more for them.").

[4] The deadline set by the court for re-investing was January 26, 2008. *See In re Bading*, 376 B.R. at 155.